IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Case No. 22-cr-224-WJM-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     **JONATHAN AVILA**,

    Defendant.

---

### ORDER DENYING CONSTRUED MOTION TO DISMISS COUNT 4 OF INDICTMENT

---

Defendant Jonathan Avila is charged in the Indictment with two counts of distributing fentanyl and one count of distributing cocaine, each in violation of 18 U.S.C. § 841, and one count of possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k) ("Count 4"). (ECF No. 1.)

On November 19, 2022, Avila filed his Notice of Constitutional Question Regarding 18 U.S.C. § 922(k), which argues § 922(k) is unconstitutional under *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2023). (ECF No. 26.) The Court construed this as a motion to dismiss Count 4 ("Construed Motion"). (ECF No. 27.) The Court ordered full briefing on the Construed Motion. (*See* ECF Nos. 29–34.) And the Court held oral argument on the Construed Motion on April 11, 2023. (*See* ECF Nos. 35–37.)

For the reasons stated below, the Construed Motion is denied.

## I. BACKGROUND

A.  Factual Background

The Government alleges that on or about April 30, 2022, Defendant knowingly possessed a firearm that had traveled in interstate commerce with the knowledge that the firearm had an obliterated serial number, in violation of 18 U.S.C. § 922(k).  (ECF No. 1 at 2.)

B.  Section 922(k)

United States Code, Title 18, Section 922(k) provides:

> It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

## II. LEGAL STANDARDS

A.  Rule 12

Federal Rule of Criminal Procedure 12(b) allows a party to raise "by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits," including the defense for "failure to state an offense."  Fed. R. Crim. P. 12(b)(1), 12(b)(3)(B)(v).  "Thus, the Supreme Court has instructed, Rule 12 permits pretrial resolution of a motion to dismiss the indictment . . . when 'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'"  *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)).  Because Defendant asserts § 922(k) is unconstitutional on its face, and not merely as applied to

2

him, resolving the Construed Motion "doesn't require a trial because it focuses solely on the facts alleged in the indictment and their legal adequacy." *Id.* at 1260 (citing *United States v. Sampson*, 371 U.S. 75, 78–80 (1962)) (emphasis in original).  The Court "may entertain motions [like the Construed Motion] that require it to answer only pure questions of law."  *Id.*

**B.    The Second Amendment**

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const., amend. II.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held these words secure an "individual right to possess and carry weapons in case of confrontation."  *Id.* at 592.  A short two years later, the Court held this newly recognized right—in one way or another—applied against the states.  *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010) (plurality opinion) ("We therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*."); *id.* at 806 (Thomas, J., concurring in part) ("[T]he right to keep and bear arms is a privilege of American citizenship that applies to the States through the Fourteenth Amendment's Privileges or Immunities Clause.").  For more than a decade, the Supreme Court was silent as lower courts rejected numerous challenges to gun regulations, even as some justices protested that refusing to step in amounted to "treatment of the Second Amendment as a disfavored right."  *Rogers v. Grewal*, 140 S. Ct. 1865 (2020) (Thomas, J., dissenting from the denial of certiorari) (joined by Kavanaugh, J., as to all but Part II); 137 S. Ct. 1995 (2017) (Thomas, J., dissenting from

the denial of certiorari) (joined by Gorsuch, J.); *Jackson v. City & Cnty. of San Francisco*, 576 U.S. 1013 (Thomas, J., dissenting from the denial of certiorari) (joined by Scalia, J.).

In the absence of further analysis from the Supreme Court, lower courts "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combine[d] history with means-end scrutiny." *Bruen*, 142 S. Ct. at 2125. The first step entailed determining whether the regulated (or prohibited) conduct is within the scope of the Second Amendment right. *Id.* at 2126. If the Government could "prove that the regulated conduct falls beyond the Amendment's original scope, 'then the analysis [could] stop there; the regulated activity is categorically unprotected.'" *Id.* (quoting *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012)). "But if the historical evidence at this step is 'inconclusive or suggests that the regulated activity is not categorically unprotected,' the courts generally proceed[ed] to step two." *Id.* (quoting *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019)). At this second step, if the law regulated conduct at the "core" of the Second Amendment, courts applied strict scrutiny; if the law regulated conduct beyond the "core," courts applied intermediate scrutiny. *Id.* at 2126–27.

Despite this broad consensus and the agreement of the United States with the approach developed by the lower courts, the Supreme Court held the lower courts employed "one step too many." *Id.* at 2127. "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* Bruen

4

instructs lower courts "to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding" and go no further.  *Id.* at 2131.  In doing so, courts should "consider whether 'historical precedent' from before, during, and even after the founding evinces a comparable tradition of regulation."  *Id.* at 2131–32.  This task, the Court acknowledged, "will often involve reasoning by analogy," which "requires a determination of whether the two regulations are 'relevantly similar.'"  *Id.* at 2132 (quoting C. Sunstein, *On Analogical Reasoning*, 106 Harv. L. Rev. 741, 773 (1993)).

While the Court did not "provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," it identified "at least two metrics: how and why the regulations burden law-abiding citizen's right to armed self-defense."  *Id.* at 2132–33.  "Therefore, whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry."  *Id.* at 2133 (internal quotation marks omitted).  Finally, the Court clarified that while "courts should not 'uphold every modern law that remotely resembles a historical analogue, . . . analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*."  *Id.* at 2133 (emphasis in original).

### III. ANALYSIS

#### A.     The Parties' Arguments

In the Construed Motion, Defendant relies heavily on a decision from the Southern District of West Virginia: *United States v. Price*, 2022 WL 6968457 (S.D.W.

5

Va. Oct. 12, 2022).  He argues § 922(k) is "facially unconstitutional in light of" *Bruen* because "bearing arms is a constitutional right that is not subject to means-end scrutiny" and "does not account for any governmental interest in punishing the bearer of a firearm with [an] altered, obliterated, or removed serial number."  (ECF No. 26 at 3.)  Moreover, because "serial numbers 'were not broadly required for all firearms manufactured and imported in the United States until the passage of the Gun Control Act of 1968,'" Defendant argues § 922(k) is inconsistent with this country's history and tradition of gun regulation at the time of the founding.  (*Id.* (quoting *Price*, 2022 WL 6968457, at *5).)  Beyond pointing to *Price*, Defendant does little in the Construed Motion to analyze the impact of *Bruen* on the constitutionality of § 922(k).

In response, the Government argues *Price* was wrongly decided.  (ECF No. 30 at 3.)  In the Government's view, *Price* and Defendant alike define the regulated conduct at too high a level of generality.  (*Id.* at 3.)  It emphasizes that "in neither *Heller* nor *Bruen* 'did the Supreme Court distill the challenged regulation to so abstract a level as mere possession or mere carrying of a firearm."  (*Id.* (quoting *United States v. Reyna*, 2022 WL 17714376, at *4 (N.D. Ind. Dec. 15, 2022).)  The Government also asserts that to meaningfully compare the conduct regulated by § 922(k) with the plain text of the Second Amendment that conduct should be defined as "possessing a firearm with an obliterated serial number," not mere possession as held by *Price*.  (*Id.* at 4.)  According to the Government, such conduct does not implicate the right guaranteed in the Second Amendment.  (*Id.*)

The Government stresses that the core of the Second Amendment is the right of "ordinary, law-abiding, adult citizens" to armed self-defense.  (*Id.* (quoting *Bruen*, 142 S.

6

Ct. at 2134).)  The right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *Bruen*, 142 S. Ct. at 2128 (quoting *Heller*, 554 U.S. at 626).  Therefore, the Supreme Court has maintained that "the carrying of dangerous and unusual weapons" may be prohibited while "the Second Amendment protects the possession and use of weapons that are in common use at the time."  *Id.* (internal quotation marks omitted).  The Government maintains firearms with obliterated serial numbers are dangerous and unusual weapons not typically possessed by law-abiding citizens.  (ECF No. 30 at 5.)  Further while "their unique attribute warranting prohibition—the obliterated serial number—has nothing to do with lawful purposes," the presence of a serial number does nothing to impair a firearm's ability to assist in armed self-defense.  (*Id.* at 5–6.)

The Government asserts that even if § 922(k) does implicate the Second Amendment, it comports with this country's history and tradition of regulating firearms.  (*Id.* at 7.)  The Government argues there "are several historical examples of commercial firearms regulations that date back to the founding" that are relevantly similar to § 922(k).  (*Id.*)  The Government observes that "'colonial governments substantially controlled the firearms trade' . . . [and] [s]everal states restricted where and to whom individuals could sell guns."  (*Id.* (quoting *Teixeira v. Cnty. of Alameda*, 876 F.3d 670, 685 (9th Cir. 2017)).)  The Government also points to "several regulations [that] applied to firearms *owners*, not just sellers, like registration and taxation requirements."  (*Id.*)  Among these examples are a 1631 Virginia law that "required the recording not only of all new arrivals to the colony, but also 'of arms and munitions.'"  R. Spitzer, *Gun Law History in the United States and the Second Amendment*, 80 L. & Contemp. Probs. 55,

7

76 (2017) (quoting Virginia Act of Feb. 27, 1631, Act LVI). "[O]ther states imposed taxes on personally held firearms as early as 1607 and well into the 1800s." (ECF No. 30 at 8 (citing Spitzer, *supra* at 60, 76).)

The Government argues these laws are relevantly similar to § 922(k) because they "address similar goals: (1) controlling and tracing the sale of firearms and (2) ensuring dangerous individuals did not obtain firearms." (*Id.* at 8.) "The Gun Control Act of 1968, which included § 922(k), was enacted to 'keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." (*Id.* at 9 (citing *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010), *abrogation recognized by*, *Range v. Att'y Gen. United States*, 53 F.4th 262, 270 (3d Cir. 2022), *reh'g granted*, 56 F.4th 992 (3d Cir. 2023)).) Therefore, the Government argues § 922(k) is consistent with this country's history of firearms regulation and is, therefore, constitutional. (*Id.* at 9.)

In his reply, Defendant argues *Bruen* is a sweeping decision that "held that any regulation that prevents a person from bearing arms for self-defense, however slight, violates the Second Amendment." (ECF No. 31 at 3.) According to him, this "necessarily means" § 922(k) is unconstitutional. (*Id.* at 3–4.) He further argues that, despite the Government's attempts to cast § 922(k) as "the type of "commercial regulation' refer[red to by Justice] Kavanaugh [in his] concurring opinion," it is not such a regulation. (*Id.* at 4.) According to Defendant, "'commercial regulations' are meant to regulate entities engaged in commerce—such as gun manufacturers"—and while § 922(k) regulates the conduct of people, "18 U.S.C. § 923(i) is the commercial regulation that requires manufacturers to place serial numbers on firearms." (*Id.*)

In its sur-reply, the Government vigorously contests Defendant's characterization of *Bruen*'s holding as foreclosing any gun regulation "*however slight*" that "prevents a person from bearing arms for self-defense." (ECF No. 34 at 2 (quoting ECF No. 31 at 2) (emphasis added by the Government).) To her credit, when pressed on this point at oral argument, defense counsel disavowed this aggressive reading of *Bruen*. Otherwise, the Government's arguments closely track the arguments in its response.

**B.     Section 922(k) Does Not Implicate the Second Amendment**

The Court has carefully read *Bruen* and is sensitive to its admonition that lower courts apply a one-step test. Nonetheless, the opinion's logic is difficult to collapse into just one step. In the Court's view, *Bruen*'s directive is best understood as one to eschew means-end analysis in favor of text, history, and tradition. *See id.* at 2134–2156.

In *Bruen*, the Court's textual analysis proceeds by answering whether: (1) petitioners are "part of 'the people' whom the Second Amendment protects"; (2) the arms at issue are "weapons 'in common use' today for self-defense"; and (3) "the plain text of the Second Amendment protects . . . [the petitioners'] conduct."[1] *Id.* at 2134. The first two of these questions were not in dispute, so the Court focused on the third. *Id.*

While the Government frames its leading argument with question three in mind, the Court reads that argument as actually more closely aligned with the second *Bruen* question. (ECF No. 34 ("Having concluded that § 922(k) prohibits possessing a firearm

---

[1] Each of these questions address interpretive issues relating to different "textual elements"—"the people," "Arms," and "keep and bear," respectively—of what the Supreme Court calls the Second Amendment's "operative clause." *Bruen*, 142 S. Ct. at 2134 (citing *Heller*, 554 U.S. at 592).

with an obliterated serial number, the Court's next inquiry is to determine whether the Second Amendment's plain text reaches that conduct.").) Upon reaching question three, *Bruen*'s analysis is entirely focused on the meaning of the word "bear," and whether it "encompasses public carry." 142 S. Ct. at 2134–35. That question, however, is distinct from the separate issue of whether the firearms the petitioners sought to carry publicly are within the class of "Arms" to which the people are entitled to keep and bear. *See id.* at 2134 (citing *Heller*, 554 U.S. at 627).

"Arms" as used in the Second Amendment is limited to those "in common use at the time." *Heller*, 554 U.S. at 624–25. Accordingly, "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Id.* at 625. On the contrary, prohibition of "dangerous and unusual weapons" is well-established as part of the "historical tradition" of this country. *Id.* at 627.

Fixing a serial number on a firearm has no impact on its operation. *Marzzarella*, 614 F.3d at 98. As the Third Circuit has noted, a firearm with a serial number is just as useful for the lawful and constitutionally protected purpose of self-defense. *Id.* Reason and the experience of law enforcement counsel that obliterating a firearm's serial number serves another purpose: making the identity of a person who possesses a particular firearm more difficult to determine. *Id.* at 99. This feature makes firearms with obliterated serial numbers useful for criminal activity, and it is the very reason Congress enacted § 922(k). *Id.* at 98–99. Nor is the fact "[t]hat a law-abiding citizen could use a gun with an obliterated serial number for lawful self-defense . . . evidence that guns with obliterated serial numbers are typically used by law-abiding citizens for

lawful self-defense." *Reyna*, 2022 WL 17714376, at *5.

On the record before it, the Court concludes that firearms with obliterated serial numbers are not within the class of firearms typically possessed by law-abiding citizens for lawful purposes. The Court also finds that firearms with an obliterated serial number—like the one Defendant is accused of possessing—are dangerous and unusual weapons and, therefore, not within the scope of the Second Amendment's guarantee.

Like numerous other courts around the country have held post-*Bruen*, the Court concludes that § 922(k) does not implicate the Second Amendment. *United States v. Trujillo*, 2023 WL 3114387, at *4 (D.N.M. April 26, 2023); *United States v. Bradley*, 2023 WL 2621352, at *5 (S.D.W. Va. Mar. 23, 2023); *United States v. Serrano*, 2023 WL 2297447, at *12 (S.D. Cal. Jan. 17, 2023); *United States v. Tita*, 2022 WL 17850250, at *7 (D. Md. Dec. 22, 2022); *United States v. Reyna*, 2022 WL 17714376, at *5 (N.D. Ind. Dec. 15, 2022); *United States v. Holton*, 2022 WL 16701935, at *4 (N.D. Tex. Nov. 3, 2022).

In sum, the Court holds that the kinds of firearms § 922(k) prohibits are not "Arm[s]" within the meaning of the Second Amendment, and as a consequence Defendant's constitutional challenge to this statutory provision fails.

**C.     This Country's History and Tradition**

Because the Court finds that § 922(k) does not impact arms covered by the Second Amendment, it need not take up the separate issue of whether it is in accord with this country's history and tradition of regulating firearms.

11

## IV. CONCLUSION

For the reasons set forth above, the Construed Motion is DENIED.

Dated this 8th day of May, 2023.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge